26 C.C.P.A.(Patents)

### HOGUE v. COWLING et al., and three other cases.

### Patent Appeals Nos. 4010-4013.

Court of Customs and Patent Appeals.

Feb. 6, 1939.

542

Charles A. Morton, of Brooklyn, N. Y., for Hogue.

Richard J. Cowling, pro se.

Henry Blech, of Chicago, Ill. (L. Loewenstein, of Chicago, Ill., of counsel), for Little et al.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

These are appeals in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of the inventions defined in the counts in issue—counts 1 and 2—as follows: Count 1 to Richard J. Cowling, and count 2 to James E. Hogue.

The interference involves three parties —James E. Hogue, Richard J. Cowling, and the alleged joint inventors Kenneth B. Little and Ludwig Loewenstein. In appeal No. 4010 appellant Hogue appealed from the decision of the Board of Appeals awarding priority of the invention defined in count 1 to Richard J. Cowling. In appeal No. 4011 appellant Richard J. Cowling appealed from the decision of the Board of Appeals awarding priority of the invention defined in count 2 to James E. Hogue. Appeal No. 4012 is in the nature of a cross-appeal by the party Hogue to appeal No. 4013 by the parties Little and Loewenstein. Appeal No. 4013 is an appeal by the parties Little and Loewenstein from the decision of the Board of Appeals awarding priority of the invention defined in count 1 to Richard J. Cowling,

and priority of the invention defined in count 2 to James E. Hogue.

There is but one record, the appeals having been consolidated for the purpose of the hearing in this court. Accordingly, we shall dispose of the issues involved in the four appeals in one opinion.

The interference is between the application of the party Hogue, serial No. 608,808, filed May 2, 1932, the application of the party Cowling, serial No. 640,217, filed October 29, 1932, and the application of the parties Little and Loewenstein, serial No. 615,153, filed June 3, 1932.

The party Hogue is the senior party, and the burden was upon the junior parties to establish priority of invention by a preponderance of the evidence.

The counts in issue read:

"1. A confection making apparatus comprising a mold having a plurality of mold cavities for the reception of the confection material and means for removing the material from the mold cavities, said means consisting of a portable carrier adapted to be supported above said mold cavities, rods depending from said carrier and spaced thereon so that a rod is engageable in each mold cavity when the carrier is supported thereabove, said carrier being removable from said mold cavities with the confection congealed on the rods, and stripper means slidably mounted on said rods for simultaneously stripping said confections from said rods when the carrier is removed from the mold cavities.

"2. The method of molding and handling individual frozen confections which consists in placing the confection material to be frozen in a plurality of mold cavities, placing a rod in each mold cavity so that the lower portion of the rod is immersed in the confection material, freezing the confection material whereby it becomes bonded to the rods and to the mold walls, breaking the bond between the mold walls and the confection material, simultaneously withdrawing all the rods with a molded confection congealed on each rod and simultaneously exerting pressure on the tops of the confections for forcing them from the rods in a single operation."

The Examiner of Interferences and the Board of Appeals each stated and analyzed the evidence relative to the activities of the party Hogue in July or August and November 1930 in considerable

detail. With regard thereto, the Examiner of Interferences said:

"At that time it is alleged that Hogue first constructed a three cavity mold of cardboard and prepared a wire lifting device which, when placed across the top of the mold, had depending portions extending within the mold cavities. In conjunction with this molding device there was used a combination wire and cardboard stripping member of general fork-shaped construction. After ice cream had been placed in the mold cavities and frozen to the twisted wires of the lifting device the mold was defrosted by placing in a pan of water, the three confections simultaneously removed by raising the wire lifting device and stripped therefrom by pressing the stripping fork against the top of the confections. Exhibits 3 to 6 are alleged to be replicas of this initial device. Such equipment was built by Hogue and tested in his home in Hot Springs, Arkansas, in the summer of 1930. Corroboration of this testimony is obtained from Mrs. Hogue who witnessed her husband's experiments and who testified that at the time they took place her baby daughter [born March 17, 1930] was just learning to crawl * * *. It has been suggested in the opposing briefs that a confusion of one year might easily have taken place and that the true date was 1931. Nothing is found in the record to justify this conclusion. It may be noted that it is far more probable that a baby would be just learning to crawl at the age of five months rather than at seventeen months. Mrs. Hogue is clearly competent to testify in these proceedings. See Patee v. Cook, 107 O.G. 835, 1903 C.D. 446. .

"This early device was further demonstrated to Mrs. Hogue and the witnesses Melton and Zorub on Thanksgiving Day, 1930. While these witnesses appear to have been somewhat uncertain as to some dates to which they testified, it is believed that their testimony must be correct in this instance. A considerable amount of additional evidence points to this conclusion. The demonstration is said to have taken place at Hogue's residence in Hot Springs, Arkansas. In November, 1931, Hogue and his wife were living in Edinburg, Texas, having moved there in August, 1931. The tinsmith Bullard testified that he made up a forty cavity mold in September or October of 1931 [identified. in the record as Hogue's Exhibit No. 9], which was seen by Hagedorn and Winder

at about that time and there is documentary evidence of the existence of apparatus capable of demonstration on a commercial scale early in November, 1931, as shown by Hogue Exhibit 13. In view of this evidence it is difficult to believe that the demonstration to which Zorub and Melton testified could have taken place in 1931."

In its decision, the Board of Appeals restated the facts relative to appellant Hogue's activities in 1930 and 1931 substantially as stated in the quoted excerpt from the decision of the Examiner of Interferences.

The tribunals of the Patent Office concurred in holding that the evidence introduced by appellant Hogue was sufficient to establish conception and reduction to practice of the invention defined in method count 2 as early as November 28, 1930. The Examiner of Interferences held, however, in which holding the Board of Appeals concurred, that the device, of which Hogue's Exhibits Nos. 3 to 6, inclusive, are representative, which the party Hogue devised in August 1930 and demonstrated to Mrs. Hogue during that month, and again demonstrated to Mrs. Hogue and the witnesses Melton and Zorub on Thanksgiving Day 1930, did not conform to the apparatus defined in count 1.

In this connection, the Examiner of Interferences said: "It is the contention of the party Hogue that the wording of count 1 is sufficiently broad to be satisfied by a structure such as he had devised in 1930. This is not believed to be the case. The count definitely calls for a stripping mechanism which shall be slidably mounted on the rods which depend in the mold cavities. Even when the stripping fork, such as Exhibits 5 and 6, is placed in operative position with relation to the confection rods of Exhibit 4, it cannot be said to be mounted thereon. The stripping fork is in no way supported by the lifting rack or the confection rods and does not even extend completely around the latter. Since such a structure is not believed to have any bearing on count 1, Hogue's activities with respect to the tin molds constructed during 1931 and the advertising literature prepared in connection therewith need be given no consideration."

The party Hogue testified that he conceived an improved device during the latter part of December 1931. Such improved device was described by him to his stepfather, the witness Frisby, early in Janu-

ary 1932, and it appears that sometime during the latter part of January or the first part of February of that year the witness Bullard constructed such a device, which was tested shortly after its completion by the witness Winder at the Golden Jersey Creamery Company's plant in Edinburg, Texas. Hogue contends that the device so constructed and tested was used as a model for the construction of commercial devices (Hogue's Exhibits Nos. 35, 36, and 37) in Chicago, Illinois, sometime during the summer of 1932.

Considerable evidence was introduced in rebuttal by the parties Little and Loewenstein, and in sur-rebuttal by the party Hogue, relative to the operativeness of the commercial devices constructed by the party Hogue in the summer of 1932. The pertinency of that evidence will be discussed in appeal No. 4013.

It was stipulated by the parties on the trial below that the party Hogue's Exhibits Nos. 23, 24, and 25 were received in the office of Clarence A. O'Brien, Hogue's patent attorney, on March 21, 1932.

Exhibit No. 23 is a letter, dated March 18, 1932, addressed to Mr. Clarence A. O'Brien, and signed by the party Hogue. Reference is made therein to previous correspondence relative to the party Hogue's earlier activities, to sketches (Hogue's Exhibit No. 24) which were enclosed therewith, and to the fact that those sketches showed changes from the structure shown in Hogue's Exhibit No. 25, which illustrates his Exhibits Nos. 3 to 6, inclusive, 9, 10, and 11.

In describing his improved device shown in the pencil sketches (Exhibit No. 24), Hogue stated in his letter (Exhibit No. 23) that—"An attachment to the lifting device, eleminates [eliminates] the holding fork as shown on the folder. The attachment is simply a rectangular piece of tin, with thirty six small holes for the wire projections on the lifting device, to go thru. On each end of this sheet of tin is a wire latch (which also serves as a handle) this latch goes up thru or between the two center rows of wire projections and latches over the handles of the lifting device, holding the sheet of tin or metal close up to the frame work of the lifting device. In operation, when these latches are thrown back, the sheet drops down, it[s] weight breaking loose the ice cream which is frozen around the wire projections. This sheet will not drop entirely off the lifting device, but just down sufficiently far to cause the units of ice cream to easily slide off, the latch catches again on the center bars of the frame before the sheet clears the ends of the wire projections. This makes the device easy to handle and go back in place so that the operation can be repeated rapidly and as many times in succession as necessary. The sheet can be taken entirely off for cleaning by springing the wire latches a little as is done when it is put on."

Hogue's Exhibit No. 24 consists of pencil sketches of an apparatus, which, as held by the tribunals of the Patent Office, corresponds to the apparatus disclosed in the party Hogue's involved application and defined in count 1.

It appears from the record that Hogue's attorney commenced the preparation of his patent application shortly after the receipt (March 21, 1932) of Exhibits Nos. 23, 24, and 25, and completed it on April 13, 1932. The application was executed by the party Hogue on April 27, 1932, and filed in the Patent Office on May 2 of that year. In view of those facts, the tribunals of the Patent Office concurred in awarding the party Hogue March 21, 1932 for conception of the invention defined in count 1, and May 2, 1932 (the date of the filing of his application) for constructive reduction of it to practice.

The parties Little and Loewenstein alleged in their preliminary statements that they conceived the inventions defined in the appealed counts on April 16, 1932; that they disclosed them to others on April 18, 1932, and successfully reduced them to practice on or about May 5, 1932. Their application was filed June 3, 1932.

It appears from the record that, on August 1, 1934, Little and Loewenstein submitted their evidence in chief, and, on May 17 and 18, 1935, they submitted evidence in rebuttal. A considerable portion of that evidence relates to the construction of a device in accordance with certain blueprints (Little and Loewenstein Exhibits Nos. 3 to 9, inclusive).

It appears from the decision of the Examiner of Interferences that "At the termination of the taking of testimony Little and Loewenstein filed motions for leave to amend their preliminary statement and to have certain testimony, taken on May 17, 1935, stand as a part of their testimony in chief."

The motions were overruled by the Examiner of Interferences, and his decision was affirmed by the Board of Appeals.

The correctness of the decision of the Board of Appeals affirming the decision of the Examiner of Interferences overruling those motions is challenged by counsel for Little and Loewenstein in appeal No. 4013. That issue will be hereinafter considered. It may be said at this point, however, that, according to the briefs of their counsel, the evidence introduced in rebuttal by Little and Loewenstein establishes that the invention was reduced to practice by them on April 29, 1932, and, it is stated, that the motions were filed so that those parties might be awarded that date for actual reduction to practice.

The party Cowling alleged in his preliminary statements that he conceived the inventions defined in the appealed counts on or about May 4, 1931; that, on May 7, 1931, he first made drawings and a written description of the inventions and, on the same day, explained them to others; and that, on or about October 15, 1931, he embodied the invention defined in count 1 in a full-size machine, which was successfully operated on that date in the city of South Pasadena, California.

During the taking of his testimony, the party Cowling prepared a drawing (Cowling Exhibit No. 16) which he stated was identical with his conception in May 1931. He further stated that, on May 7, 1931, a sketch similar to his Exhibit No. 16 was disclosed to one Morris Hirsch, a patent attorney. Thereupon, it was stipulated by counsel for each of the parties here involved that if "Mr. Hirsch were called as a witness in this case, he would testify that Mr. Cowling made a disclosure to him in the form of a sketch substantially as shown in Exhibit No. 16; and that Mr. Hirsch has made a diligent search for the original sketch but has been unable to locate same; and that such sketch was made at a conference between Messrs. Cowling and Hirsch on May 7, 1931; * * * and that Mr. Hirsch at the time understood the operation of the device disclosed in the sketch of which Exhibit No. 16 is a copy."

Cowling's Exhibit No. 16, although a more or less crude sketch, discloses the various elements in apparatus count 1, except a mold having a plurality of mold cavities, which, according to the record, was old and in use prior to May 7, 1931.

The tribunals of the Patent Office concurred in holding that Cowling's Exhibit No. 16 was a sufficient disclosure of each of the counts in issue, and, accordingly, awarded the party Cowling May 7, 1931 for conception of the method defined in count 2 and the apparatus defined in count 1.

Relative to the method count, the Examiner of Interferences said: "Since the steps of filling mold with soft ice cream, freezing it until hard and subsequently dipping the mold in warm water to release the frozen article were common practice in the ice cream industry long prior to this date, it is believed obvious that the normal use of the device disclosed in Exhibit 16 would result in the performance of the method recited by count 2 of this interference."

It appears that, on May 7, 1931, the party Cowling wrote a letter (Cowling Exhibit No. 6) to one J. V. Cariffe, manager of the Alaska Sucker Company, St. Louis, Missouri, which exhibit has no particular bearing on the activities of the party Cowling, except that attached to it is Cowling's Exhibit No. 7, which the witness Cariffe testified was enclosed with Exhibit No. 6 and was received by him on May 9, 1931. Cariffe further testified that the initials and the date appearing on Exhibit No. 7 (J. V. C., 5/9/31) were inscribed by him on that date. Except for the inscription by Cariffe, the exhibit is not dated. It is a typewritten document with the typewritten initials of the party Cowling (R. J. C.) appearing thereon. A structure similar to that disclosed in Cowling's Exhibit No. 16 is described therein.

The witness Cariffe testified that he built a device corresponding to the structure described in Cowling's Exhibit No. 7; that such device operated satisfactorily; and that shortly after he had completed and operated it he was assigned to field duty and had no opportunity to perform any further experiments until October 1931, at which time he was located in South Pasadena, California, at the plant of the Popsicle Service of California, Ltd.

It appears from Cowling's Exhibit No. 17, which is a payroll record of the Popsicle Service of California, Ltd. for the week ending October 22, 1931, that the witness Cariffe was in the employ of that company at its South Pasadena plant on October 18 of that year.

It further appears from the testimony of the witnesses Cariffe (who entered upon his duties as manager of the Popsicle Service of California, Ltd's. plant at South Pasadena, California, on October 18, 1931), Robert F. Eddy (assistant manager of that plant), and Jacques A. Veltman (Pacific Coast manager of that company) that immediately after the arrival of Cariffe at the South Pasadena plant two devices corresponding to the disclosures of the party Cowling were constructed and successfully operated. One of those devices was introduced in evidence as Cowling's Exhibit No. 18. That exhibit was used in the latter part of October and the early part of November 1931 in conjunction with Cowling's Exhibit No. 19, which is a mold having a plurality of mold cavities and which had been in use in the South Pasadena plant prior to the construction of Exhibit No. 18. Although Exhibit No. 18 is a somewhat crude device, it is clear from an examination of it that, when used in conjunction with Exhibit No. 19, it would, and, according to the testimony, did, operate successfully. The combined devices, Exhibits Nos. 18 and 19, clearly correspond to the apparatus defined in count 1.

We have not attempted to detail here all of the evidence relative to the activities of the parties in this interference. To do so, would unduly extend this opinion.

The tribunals of the Patent Office concurred in holding that the party Hogue had established conception and reduction to practice of the invention defined in method count 2 as early as November 28, 1930, and that, as the party Cowling had not established conception of the invention defined in that count prior to May 7, 1931, and as the parties Little and Loewenstein did not allege in their preliminary statement a date of conception of the invention prior to April 16, 1932, the party Hogue was entitled to an award of priority of the invention defined in that count.

As to count 1, the tribunals of the Patent Office concurred in holding that the structure which the party Hogue devised and operated as early as November 28, 1930 did not conform to the structure defined therein; that the party Cowling was entitled to the latter part of October or the first part of November 1931 for reduction to practice of the invention defined in that count; and that, as the party Hogue did not conceive the invention prior to the latter part of December 1931 or

early part of January 1932 and as the parties Little and Loewenstein did not claim in their preliminary statement conception of the invention defined in that count prior to April 16, 1932, the party Cowling was entitled to an award of priority of the invention defined in that count.

### Appeal No. 4010.

In appeal No. 4010, appellant Hogue appeals from the decision of the Board of Appeals awarding priority of the invention defined in count 1 to Richard J. Cowling, one of the appellees.

It is contended by appellant that the structure devised by him in July or August 1930, and successfully operated by him as early as November 28, 1930, conforms to the structure defined in count 1; that he was the first to conceive and the first to reduce the invention to practice, and is, therefore, entitled to an award of priority.

It is the position of counsel for appellant that the language "stripper means slidably mounted on the rods," contained in count 1, should be construed broadly so as to "include any stripper means capable of being prepared for use or placed in position so as to slide along the rods for 'simultaneously stripping'" the confections from the rods, and that, when so construed, it reads upon appellant's stripping fork, illustrated by Exhibits Nos. 3 and 6, which was used in conjunction with the portable carrier and three cavity mold device constructed and operated by appellant in 1930.

Count 1 involved in this appeal was suggested to each of the parties by the Primary Examiner.

There is nothing in appellant's application, nor in either of the other applications here involved, which either discloses or suggests a stripper means of the type employed by appellant in his 1930 activities. On the contrary, the stripper means disclosed in the applications of the parties and the one which the Primary Examiner must have had in mind when he prepared the count for interference purposes is similar to appellant's improved device, claimed to have been conceived by him in December 1931 and disclosed to the witness Frisby in January 1932, which is described in his letter (Exhibit No. 23), hereinbefore quoted, dated March 18, 1932, and addressed to his patent attorney. In that letter appellant stated that "An attachment to the lifting device, eleminates [eliminates] the holding fork as shown on the folder. The

attachment is simply a rectangular piece of tin, with thirty six small holes for the wire projections [depending rods] on the lifting device [portable carrier], to go thru." There appellant described a unitary structure having a stripper means attached to the lifting device or portable carrier with holes or openings through the stripper means to accommodate the depending rods, the structure being so arranged that, in operation, the weight of the stripper means stripped the frozen confections from the rods, over and on which the stripper means was slidably mounted.

The difference between appellant's improved device and the devices constructed and operated by him in 1930 and 1931 is so great that the Primary Examiner could not have had the latter devices in mind when he prepared the involved count.

In its decision, the Board of Appeals stated that the involved count "recites a stripper means slidably mounted on the rods and we fail to see how the experimental device in 1930 [the device operated by appellant Hogue during that year] could by any stretch of language be said to incorporate a stripping fork supported by the lifting rack." Appellant Hogue takes exception to the board's language, and here contends that the involved count does not contain the limitation that the stripper means is supported by the lifting rack or portable carrier.

The count is clearly limited to a "stripper means slidably mounted on" the "rods" depending from, and which are a part of, the lifting rack or portable carrier, although it does not contain the language stripper means "supported by the lifting rack."

■ It is clear from an examination of appellant's Exhibits Nos. 3 to 6, inclusive, 9, 10, and 11 that the fork-shaped stripper devices constructed and used by him in 1930 and 1931 were designed to be used to remove frozen confections from the rods depending from the portable carriers. It is equally clear that those devices were not designed to slide on all of the rods, nor do they, in fact, when in use, so contact such rods. Obviously then, appellant's fork-shaped stripper devices cannot be said to be "stripper means slidably mounted on said rods" under any proper interpretation of the language of the count. We are of opinion, therefore, that the involved count does not read upon the devices con-

structed and operated by appellant during 1930 and 1931.

Accordingly, as appellee Cowling conceived the invention defined in count 1 in May 1931, and successfully reduced it to practice in the latter part of October or the first part of November of that year, long prior to its conception by appellant Hogue and the parties Little and Loewenstein, appellee Cowling is entitled to an award of priority.

For the reasons herein stated, the decision of the Board of Appeals is affirmed.

### Appeal No. 4011.

In appeal No. 4011 appellant Cowling appeals from the decision of the Board of Appeals awarding priority of the invention defined in method count 2 to James E. Hogue, one of the appellees.

It is contended by appellant that the testimony of the party Hogue and that of his corroborating witnesses (his wife Belva Hogue and his friends Melton and Zorub) that he operated a device, of which Exhibits Nos. 3 to 6, inclusive, are illustrative, on Thanksgiving Day, November 28, 1930, at his home in Hot Springs, Arkansas, is not supported by any documentary evidence; that it was based upon mere recollection of the witnesses; and that the operation of appellee's device so testified to might well have taken place a year later, after appellant Cowling reduced the invention to practice.

Our attention is called to so-called inconsistencies in the testimony of Hogue's witnesses. It is claimed that Hogue was in Little Rock, Arkansas, for the purpose of incorporating the Polar Products Company on or about Thanksgiving Day, November 1931, and that it is quite likely that it was at that time that he disclosed the invention to his wife and the witnesses Melton and Zorub.

It clearly appears from the record that appellee Hogue moved his family, consisting of his wife and baby daughter, from Hot Springs, Arkansas, to Edinburg, Texas, in August 1931; that he made his home in that city, at least, until May 1932; that he was not living in Hot Springs, Arkansas, in November 1931, and therefore, the demonstration performed by him in the presence of his witnesses in his home in Hot Springs could not have taken place at that time. Furthermore, the witness Fred A. Young, secretary of the Polar Products

548.

Company, Inc. (organized for the purpose of commercializing Hogue's invention), upon being shown a "certified copy of articles of incorporation," testified that that corporation was incorporated on December 2, 1931, and that he saw appellee Hogue's apparatus, of which Exhibits 3 to 6, inclusive, are illustrative, operated at the Golden Jersey Creamery Company's plant in Edinburg, Texas, in June or July 1931. The witness was positive that he saw Hogue's device operated at the Golden Jersey Creamery Company's plant several months prior to the incorporation of the Polar Products Company, Inc.

Frederick Hagedorn, one of appellee Hogue's witnesses, testified that he was in charge of the Golden Jersey Creamery Company's plant at Edinburg, Texas; that his company commenced to manufacture ice cream about January 1, 1931; that, about March 1931, the company commenced the manufacture of popsicles; that, sometime during June or July 1931, appellee Hogue and the witness Frisby demonstrated a device similar to Hogue's Exhibits Nos. 3 to 6, inclusive, in the Golden Jersey Creamery Company's plant. The witness described the device and its operation, and stated that it was successfully operated.

Hogue's witness Harold F. Winder of Edinburg, Texas, stated that he was plant manager of the ice cream department of the Golden Jersey Creamery Company; that he assisted in demonstrating a device similar to Hogue's Exhibits Nos. 3 to 6, inclusive, for appellee Hogue and the witness Frisby in the Golden Jersey Creamery Company's plant in March, April, or May 1931; that he also saw appellee's Exhibits Nos. 9, 10, and 11, or a device similar thereto, successfully operated in the Golden Jersey Creamery Company's plant at Edinburg, Texas, in September 1931.

Other witnesses testified for appellee, but we deem it unnecessary to discuss their testimony.

■ We think it is clear from the evidence that the demonstration of a device similar to appellee Hogue's Exhibits Nos. 3 to 6, inclusive, took place on November 28, 1930, as stated by appellee and his witnesses Mrs. Hogue, Melton, and Zorub, and that the tribunals of the Patent Office correctly held that appellee was entitled to that date for reduction to practice of the method defined in count 2 of the interference.

Inasmuch as appellant Cowling did not conceive the invention defined in count 2 until May 1931, and Little and Loewenstein do not claim that they conceived the invention prior to April 16, 1932, we must hold that appellee Hogue is entitled to an award of priority of the invention defined in that count.

The decision of the Board of Appeals is affirmed.

### Appeal No. 4012.

This appeal by the party James E. Hogue is in the nature of a cross-appeal to appeal No. 4013 by the parties Little and Loewenstein.

It is here contended by the party Hogue that, although the Board of Appeals was right in holding that Little and Loewenstein were not entitled to an award of priority of the inventions defined in counts 1 and 2 of the interference, it, nevertheless, erred in holding that they were, first, joint inventors, and, second, original inventors.

Due to the fact that we have held in appeals Nos. 4010 and 4011 that Little and Loewenstein are not entitled to an award of priority of the invention defined in either of the involved counts (Nos. 1 and 2), the claims made by the party Hogue in this appeal need not be considered.

The decision of the Board of Appeals is affirmed.

### Appeal No. 4013.

In this appeal Little and Loewenstein have appealed from the decision of the Board of Appeals awarding priority of the invention defined in count 1 to Richard J. Cowling, and priority of the invention defined in count 2 to James E. Hogue.

It is here contended, as we understand the brief of counsel for appellants, that, in view of the prior art, the claims constituting the counts in the interference are not patentable.

■ It is elementary that in interference proceedings the patentability of claims constituting the counts in issue will not be considered by this court, the jurisdiction of the court in such proceedings being limited to the question of priority of invention and to such ancillary questions as may be involved therein.

Counsel for appellants contend that they have established by the evidence that a device constructed in accordance with the disclosure in the party Hogue's in-

volved application is inoperative. It is stated in their brief that they "made a motion to dissolve the interference as to Hogue on the grounds of inoperativeness but it was ruled our motion was made out of order, which ruling we claim was error."

It appears that, on May 18, 1935, immediately following the introduction of rebuttal evidence by appellants, counsel for appellants made an oral motion (we are unable to find any other) to dissolve the interference as to the party Hogue on the ground that the apparatus disclosed in the Hogue application does not conform to the invention defined in count 1, in that it would not operate to simultaneously strip the confections from the rods when the "carrier" was removed from the mold cavities. No explanation is offered for the failure of appellants to file a motion to dissolve during the motion period.

In his decision, the Examiner of Interferences said: "Since no motion to dissolve was brought under Rule 122 during the motion period, the question of the sufficiency of the Hogue application as a constructive reduction to practice cannot be raised. * * * The case of Garand v. Pedersen, 76 F.2d 407, 22 C.C.P.A., Patents, 1161; 460 O.G. 9; 1935 C.D. 525; extends this doctrine to apparatus substantially identical with the application disclosure. Following this decision testimony concerning the operability of Hogue Exhibits 35 to 37 has no bearing on the Hogue application as a reduction to practice."

As hereinbefore noted, evidence was introduced in rebuttal by appellants Little and Loewenstein for the purpose of establishing that the party Hogue's commercial devices produced in the summer of 1932 (Hogue's Exhibits Nos. 35, 36, and 37), which conform to the disclosure in Hogue's involved application, were inoperative.

In its decision, the Board of Appeals stated that it agreed with the Examiner of Interferences that, in view of the record, it was unnecessary to consider that rebuttal evidence.

■ Appellants Little and Loewenstein having failed to file a motion during the motion period to dissolve the interference as to the party Hogue ·on the ground of inoperativeness of the apparatus disclosed in his application, and no satisfactory reason being given for such failure, we must hold that the refusal of the tribunals of

the Patent Office to consider the evidence relative to the operativeness of Hogue's commercial devices, which are substantially identical with the disclosure in his involved application, was not error. Schweyer v. Thomas, 68 F.2d 953, 21 C.C.P.A., Patents, 859; Garand v. Pedersen, 76 F. 2d 407, 22 C.C.P.A., Patents, 1161, 1166; Fishburn and Robbins v. Vincent, 88 F.2d 711, 24 C.C.P.A., Patents, 1079; Creed et al. v. Potts, 96 F.2d 317, 25 C.C.P.A., Patents, 1084.

It is further contended that the Board of Appeals erred in affirming the decision of the Examiner of Interferences overruling Little and Loewenstein's motions, filed subsequent to the taking of the testimony in the case, to amend their preliminary statements, and to consider their rebuttal testimony relating to their activities in reducing the invention to practice as testimony in chief. It is claimed that appellants' rebuttal testimony establishes that they reduced the invention to practice on or about April 29, 1932, instead of May 5, of that year, as alleged in their preliminary statements.

In appeals Nos. 4010 and 4011 we have held that the party Hogue is entitled to November 28, 1930 for reduction to practice of the invention defined in count 2, and that the party Cowling is entitled to the latter part of October or the first part of November 1931 for reduction to practice of the invention defined in count 1. Accordingly, an award of priority could not be awarded the parties Little and Loewenstein of the inventions defined in the appealed counts, even though they be given the benefit of April 29, 1932 for reduction to practice. We deem it unnecessary, therefore, to consider the contention of counsel for Little and Loewenstein that the tribunals of the Patent Office erred in denying their motion to amend their preliminary statements, and in refusing to consider evidence introduced by them in rebuttal as evidence in chief.

■ Counsel for appellants contend that the party Cowling is not entitled to the benefit of the work done by the witnesses Cariffe, Veltman, and Eddy in reducing to practice the inventions defined in the involved counts, because, it is claimed, Cowling knew nothing about the activities of those parties until after he had filed his involved application.

The party Cowling testified that he was in South Pasadena, California, in Novem-

ber 1931, and that he discussed the invention briefly with the witness Cariffe. Furthermore, the witness Cariffe, under whose supervision Cowling's Exhibit No. 18 was constructed and successfully operated in conjunction with Cowling's Exhibit No. 19, as hereinbefore stated, testified that the invention was disclosed to him by the party Cowling. The disclosure, it will be recalled, was contained in Cowling's Exhibit No. 7, a letter written by the party Cowling to the witness Cariffe. In addition to a disclosure of the invention, the exhibit contains the suggestion that Cariffe prepare a sketch of the disclosed apparatus. Cariffe, at the time he received the letter, was in a position not only to make a sketch but also to construct and test a device conforming to the disclosure, which he proceeded to do, evidently being of the opinion that, in so doing, he was acting in accordance with the wishes of the party Cowling.

We think it sufficiently appears from the record that in constructing devices in conformity with Cowling's disclosure to him, and in operating them, the witness Cariffe was acting in the capacity of agent of the party Cowling, and that the latter is entitled to the benefit of the work done by Cariffe and those who assisted him.

Other arguments are made in the brief of counsel for appellants Little and Loewenstein relative to the devices constructed and operated by Hogue in 1930 and 1931 and by Cowling in 1931. Our views with regard to those devices have been hereinbefore expressed, and need not be repeated.

Lastly, it is contended by counsel for Little and Loewenstein that the party Cowling is chargeable with laches, because he failed to file his application for a patent for approximately one and one-half years "after his claimed conception date."

There are no facts or circumstances of record to warrant a holding that Cowling is chargeable with laches. The facts relative to his reduction to practice in October or November 1931 have been hereinbefore stated. Having reduced the inventions to practice in October or November 1931, Cowling was not chargeable with diligence at the time (April 1932) appellants entered the field. No claim is made here by Little and Loewenstein that Cowling abandoned, suppressed or concealed his invention. Furthermore, it appears that as a result of a conversation in April 1932 between the party Cowling and several individuals associated with the Popsicle Company with which company Cowling was also associated, several hundred of the Cowling devices were constructed in June 1932, and sold or leased to the trade during the summer of that year.

For the reasons herein stated, the decision of the Board of Appeals is affirmed.

Affirmed.