Opinion for the court filed by Circuit Judge DYK.
Dissenting opinion filed by Circuit Judge NEWMAN.
DYK, Circuit Judge.
Plaintiff Solvay S.A. (“Solvay”) appeals from a judgment of the United States District Court for the District of Delaware in favor of defendant Honeywell International (“Honeywell”). The district court held that asserted claim 1 of Solvay’s U.S. Patent No. 6,730,817 (“the '817 patent”) was invalid under 35 U.S.C. § 102(g)(2) (2006). This was so because engineers working at the Russian Scientific Center for Applied Chemistry (“RSCAC”) first conceived the invention, which was reduced to practice in this country by Honeywell personnel pursuant to the RSCAC’s instructions, and did not abandon, suppress, or conceal it.
Background
I
The question at the heart of this appeal is when an invention conceived by a foreign inventor and reduced to practice in the United States qualifies as prior art *1000 under § 102(g)(2).[1] That section provides, “[a] person shall be entitled to a patent unless ... before such person’s invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it.” 35 U.S.C. § 102(g)(2). Although section 102(g) initially was designed for determining priority of invention in interference proceedings, it is settled that the section has “independent significance as a basis for prior art outside of the interference context.” Thomson, S.A. v. Quixote Corp., 166 F.3d 1172, 1175 n. 3 (Fed.Cir.1999); see also Solvay v. Honeywell International, Inc. (“Solvay I”), 622 F.3d 1367, 1375-76 (Fed.Cir.2010). A patent is invalid under that section if the claimed invention was made in this country by another inventor before the patent’s priority date. See, e.g., Solvay I, 622 F.3d at 1375 n. 3 (describing 1999 amendments to § 102(g)). Making the invention requires conception and reduction to practice. While conception is the “formation, in the mind of the inventor, of a definite and permanent idea of a complete and operative invention,” reduction to practice “requires that the claimed invention work for its intended purpose.” Id. at 1376 (citing Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed.Cir.1986)). It is also necessary that the invention not be suppressed, abandoned, or concealed. See, e.g., Apotex USA, Inc. v. Merck & Co., 254 F.3d 1031, 1036 (Fed.Cir.2001).
Our prior cases have illuminated what is meant by “made in this country.” See, e.g., Solvay I, 622 F.3d at 1376 (citing Mycogen Plant Sci., Inc. v. Monsanto Co., 243 F.3d 1316, 1331 (Fed.Cir.2001); Apotex, 254 F.3d at 1036). Although the inventors may reside in a foreign country and conceive the invention abroad, a reduction to practice made outside the United States is beyond the scope of § 102(g)(2) prior art. In other words, § 102(g)(2) allows conception to occur in another country, but in such circumstances requires the work constituting the reduction to practice to be performed in the United States by or on behalf of the inventor.[2] However, “there is no requirement that the inventor be the one to reduce the invention to practice so long as the reduction to practice was done on his behalf’ in the United States. In re DeBaun, 687 F.2d 459, 463 (CCPA 1982) (citing Litchfield v. Eigen, 535 F.2d 72, 76 (CCPA 1976)). Consistent with that principle, “[a]cts by others working explicitly or implicitly at the inventor’s request will inure to his benefit.” 3A Donald S. Chisum, Chisum on Patents § 10.06[3].
Here, Honeywell contends that the invention was conceived by Russian inventors outside the United States and reduced to practice in the United States by Honey *1001 well personnel following the Russian inventors’ instructions before the '817 patent’s priority date. It follows, argues Honeywell, that the invention qualifies as § 102(g)(2) prior art.
II
Solvay’s '817 patent claims an improvement to a method of making a hydrofluoro-carbon (“HFC”) known as HFC-245fa.[3] '817 patent col. 1 11. 4-5. HFC-245fa belongs to a group of HFCs that do not deplete the ozone layer and for that reason, are legislatively mandated to replace ozone-depleting alternatives. HFC-245fa is especially useful in preparing polymeric materials commonly used for insulation in refrigeration and heat storage systems. The '817 patent has a priority date of October 23,1995.
In 1994, before Solvay’s priority date, Honeywell and RSCAC personnel entered into a research contract. Pursuant to that agreement, RSCAC engineers, working in Russia, conducted process development studies for the commercial production of HFC-245fa. In July 1994, the RSCAC sent Honeywell a report documenting the development of a continuous process capable of producing high yields of HFC-245fa by reacting HCC-240fa[4] with hydrogen fluoride in the presence of a catalyst. Honeywell personnel in the United States used the RSCAC’s report to run the same process in this country in 1995, before the '817 patent’s October priority date.[5]
Solvay sued Honeywell in the District of Delaware, alleging that the process Honeywell was using to manufacture HFC-245fa infringed certain claims of the '817 patent. Independent claim 1, the only claim at issue on appeal, reads:
In a process for the preparation of [HFC-245fa] comprising reaction of [HCC-240fa] with hydrogen fluoride in the presence of a hydrofluorination catalyst, the improvement which comprises carrying out the reaction at a temperature and under a pressure at which [HFC-245fa] is gaseous and isolating ... [HFC-245fa] from the reaction mixture by drawing off [HFC-245fa] and hydrogen chloride [HC1] in a gaseous phase as each of said [HFC245fa] and [HC1] is being formed.
'817 patent, col. 511. 36-46.
Honeywell defended, inter alia, on the ground that independent claim 1 and dependent claims 5, 7, 10, and 11 of the '817 patent were invalid under § 102(g)(2). Honeywell’s initial theory was that its engineers had reduced the invention to practice in the United States and that this made the Honeywell engineers inventors under § 102(g)(2).
In 2008, the district court construed the “isolating” limitation in claim 1 to read:
The process for making HFC-245fa includes a reaction at a temperature and under a pressure whereby HFC-245fa and HC1 are produced in gaseous form and separated from the reaction mixture in a gas stream that, can include other compounds, such as unconverted reactants and chlorofkioropropanes possibly formed by incomplete fluorination of HCG-mfa.
*1002 J.A. 4 (emphasis added). The district court thus construed “isolating” to require “separating” HFC-245fa and HC1 from the reaction mixture. Id. It did not require separating only those components from the reactor. Id. Based on that claim construction, the district court ruled on summary judgment that Honeywell’s process infringed claims 1, 5-7, 10, and 11. However, the district court granted summary judgment of invalidity as to claims 1, 5, 7, 10, and 11 under § 102(g)(2) on the ground that the Honeywell engineers were other inventors who made the invention in this country without abandoning, suppressing, or concealing it.[6]
The district court’s judgment was appealed to this court. On appeal, we agreed with the district court’s claim construction of the term “isolating” in claim 1, explaining that “claim 1 is not limited to ‘isolating’ only HFC-245fa and HC1 and residual amounts of other compounds.” Solvay I, 622 F.3d at 1382. We affirmed the district court’s ruling on summary judgment that claims 1, 5, 7, 10, and 11 were infringed. However, we reversed the finding that claims 1, 5, 7, 10, and 11 were invalid under § 102(g)(2), explaining that Honeywell personnel could not qualify as “another inventor” because they “did not conceive the invention of the '817 patent, but derived it from others,” specifically, the RSCAC engineers who “first conceived the invention in Russia.” Id. at 1378-79.
On remand, Honeywell asserted an alternative theory as to why § 102(g)(2) applied, arguing that the Russian inventors made the invention in this country by sending instructions to Honeywell personnel who used the instructions to reduce the invention to practice in this country. The parties did not dispute the fact that, under the district court’s claim construction, the RSCAC process corresponded to the invention recited in claim 1 of the '817 patent or that the RSCAC engineers first conceived the invention and reduced it to practice in Russia. But the parties disputed whether (1) the Honeywell reduction to practice should be attributed to the Russian inventors and (2) whether the Russian inventors had disclosed the invention rather than abandoning, suppressing, or concealing it. Although the district court held that, as a matter of law, the RSCAC engineers should be treated as inventors who made the invention in the United States under § 102(g)(2), it denied summary judgment on the invalidity of claim 1 because of genuine issues of material fact as to whether the RSCAC engineers disclosed their invention in a 1994 Russian patent application rather than abandoning, suppressing, or concealing it.
Eventually, a jury determined that, as required by § 102(g)(2), the RSCAC did disclose the invention of claim 1 in the 1994 Russian patent application such that they did not abandon, suppress, or conceal it. Based on the jury verdict, the district court entered judgment for Honeywell, finding asserted claim 1 invalid under § 102(g)(2).[7] Solvay appealed. We have *1003 jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
Discussion
I
The priority date for Solvay’s '817 patent is October 23, 1995. The parties do not dispute that if the Russians conceived the invention and reduced it to practice in this country before that date without abandoning, suppressing, or concealing it, claim 1 of Solvay’s '817 patent is invalid under § 102(g)(2). On appeal, Solvay does not dispute that the Russians were first to conceive the invention recited in claim 1 or that Honeywell reduced it to practice in this country before Solvay’s October 23, 1995, priority date, but challenges (1) the jury’s finding of nonsuppression, and (2) the district court’s ruling that the Russians made the invention in this country.
As to the first issue, Solvay argues that the district court erroneously construed claim 1 and that the resulting instructions tainted the jury’s finding that the Russians disclosed the invention in a 1994 Russian patent application and, therefore, did not suppress or conceal it. In other words, Solvay argues that the application did not satisfy § 102(g)(2) because the application did not disclose the full scope of the claims if they were properly construed. Before addressing the merits of Solvay’s claim construction contention, we consider whether Solvay has waived its objection by failing to request in the district court the construction it now advocates.
A
The general rule is that “an appellate court does not give consideration to issues not raised below.” Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); see also Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). The doctrine of waiver “has been applied to preclude a party from adopting a new claim construction position on appeal.” Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1346 (Fed.Cir.2001). A claim construction argument is considered “new” if a party “change[s] the scope of the claim construction” rather than “clarifying or defending the original scope of its claim construction” or “supporting its existing claim construction position with new citations to the specification.” Id.
According to Solvay, claim 1 requires that HFC-245fa and HCl be removed from the reaction mixture permanently so that the HFC-245fa and HCl are not recycled back into the reactor. Claim 1 reads:
In a process for the preparation of [HFC-245fa] comprising reaction of [HCC-240fa] with [HF] in the presence of a hydrofluorination catalyst, the improvement which comprises carrying out the reaction at a temperature and under a pressure at which [HFC-2h5fa] is gaseous and isolating ... [HFC-2Jp5fa] from the reaction mixture by drawing off [HFC-2I5fa] and [HCl] in a gaseous phase as each of said [HFC-24.5fa] and [HCl] is being formed.
'817 patent col. 5 11. 36-46 (emphasis added).
When this case was first appealed, this court upheld the district court’s construction of the term “isolating” in claim 1 of the '817 patent to mean “drawing off’ or “separating” HFC-245fa and HCl from the reaction, but not necessarily “purifying” the drawn-off material. Solvay I, 622 F.3d at 1382. As a result, the gas stream conveying HFC-245fa from the reactor can include other compounds from the reaction mixture, not only HFC-245fa and HCl. The parties did not raise, and this court did not address, the issue of whether the *1004 HFC-245fa and HC1 could return to the reactor after being drawn off initially.
Near the end of the validity trial, however, a disagreement between the parties arose as to whether the reaction products had to be permanently isolated from the reaction mixture. Solvay argued that “isolating” the reaction products necessarily required keeping them separated. In response, Honeywell argued that requiring permanent separation contradicted the district court’s claim construction, affirmed by this court, as well as the plain language of the claim.
The district court held that, based on claim language, specification references, and this court’s construction of the term “isolating,” the reaction products did not have to be permanently isolated from the reaction mixture. The court granted Honeywell’s request for a standard jury instruction that the term “comprising” means that “the claim is not limited to a process that includes only what is in the claim and nothing else.” J.A. 49. At trial, Honeywell argued that the '817 patent could read on processes in which HFC-245fa and HC1 return to the reaction mixture through additional steps after the initial separation.
Solvay contends that the district court’s instruction reflected an erroneous interpretation of “isolating.” According to Sol-vay, if given the correct interpretation, “the jury might well have found that the Russian application did not disclose Sol-vay’s invention” because in the RSCAC process, some gaseous HFC-245fa condenses back into a liquid and drips back into the reaction mixture after the initial separation. Reply Br. 34.
The problem is that Solvay did not ask the district court to modify the claim construction or accompanying jury instruction to require “isolating” to mean “isolating permanently.” When the issue surfaced at trial, it was raised by Honeywell in response to Solvay’s questioning of its expert -witness. Honeywell argued that Solvay was attempting to make improper claim construction arguments to the jury. In response, Solvay insisted that the isolating limitation necessarily implied permanence notwithstanding the ambiguity that the disagreement between the parties made apparent. The district court, which had not previously been asked to consider the issue of permanence, asked the parties to submit briefs on the issue. Solvay, in its brief, still did not request any modification or clarification of the claim construction, “reassertpng] that it agree[d] with the Court’s proposed construction.” J.A. 5263. Because Solvay failed to object to the court’s construction or jury instruction with respect to the term “isolating,”[8] it waived the issue and cannot now raise novel arguments to redefine the scope of claim 1. See LizardTech, Inc. v. Earth Res. Mapping, Inc., 424 F.3d 1336, 1341 (Fed. Cir.2005) (a party that “agreed to the district court’s construction at the time ... cannot [on appeal] argue against that claim construction simply because it resulted in an adverse ruling”).[9]
B
Even if the claim construction issue had been properly raised, we see no *1005 error in the district court’s construction. Claim construction is a question of law reviewed de novo. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1451 (Fed.Cir. 1998). The conclusion that “isolating” means “separating,” and therefore does not preclude additional steps that could occur after the initial isolation, is consistent with the claims and specification. Claim 1 of the '817 patent uses the transitional term “comprises” to define the bounds of the patented improvement. See '817 patent col. 5 1.40. The well-established meaning of “‘comprising’ in a method claim indicates that the claim is open-ended and allows for additional steps.” Invitrogen Corp. v. Biocrest Mfg., L.P., 327 F.3d 1364, 1368 (Fed.Cir.2003) (citing Vivid Techs., Inc. v. Am. Sci. & Eng’g, Inc., 200 F.3d 795, 811 (Fed.Cir.1999)).
We agree with the district court that nothing in the claims or specification overcomes the well-established meaning of “comprises” as a transitional term allowing for additional steps. Solvay supports its position by pointing to a portion of the specification stating that “[i]t is advantageous to separate the [HFC-245fa] and the [HC1] from the reaction mixture as they are being formed and to keep in, or return to, the reactor the unconverted reactants, as well as the chlorofluoropro-panes possibly formed by incomplete fluo-rination of [HCC-240fa].” '817 patent col. 2 1. 64 to col. 3 1. 2. On its face, the statement pertains to recycling reactants, not reaction products, and does not expressly or impliedly preclude recycling reaction products to the reaction mixture as well.
Solvay attempts to buttress its argument by pointing out that the reference in the specification corresponds to a statement in the '817 patent’s prosecution history that purportedly “shows that the isolation limitation was intended to distinguish” the invention from the prior art, specifically the '192 patent. Reply Br. 32. According to Solvay, it amended claim 1 to avoid rejection in view of the '192 patent and thus explained to the examiner that its invention “enables [HFC-245fa] to be easily separated from the reaction mixture, which is an advantage as it makes it possible to retain or to return to the reactor the unconverted reactants • and [products of incomplete fluorination].” J.A. 8364. As with the specification reference, the statement pertains only to recycling reactants and incomplete reaction products and does not require HFC245fa or HC1 to be isolated once and for all time when they first leave the reaction mixture in gaseous form. It does not follow that distinguishing a process on the basis of the continuous removal of reaction products also requires such removal to be permanent. Continuous removal pertains to the status of the reaction and does not connote or require permanence with respect to steps occurring after products are formed and removed while the reaction is still ongoing. We find no legal error in the court’s claim construction. Under this claim construction, Solvay does not on appeal contest that the Russian patent application sufficiently disclosed the invention.[10]
II
Solvay urges that, even under the district court’s claim construction, the requirements of § 102(g)(2) are not satisfied. Solvay does not dispute that Honeywell fully performed the RSCAC’s process for making HFC-245fa in the United States *1006 before the '817 patent’s October 1995 priority date. Nor is it disputed that, under the district court’s claim construction, the RSCAC process corresponds to the invention claimed by the '817 patent. Instead, Solvay argues that (1) the doctrine of in-urement, defining when the activities of others inure to the benefit of the inventor, controls the question of whether Honeywell’s work can be attributed to the RSCAC engineers, and (2) the undisputed facts do not establish inurement because the RSCAC engineers did not expressly ask the Honeywell researchers to perform the inventive process.
Assuming that the inurement doctrine governs, inurement does not require that the inventor expressly request or direct the non-inventor to perform reductive work. To be sure, no inurement can arise from a third party’s “unwarranted and hostile use” of another’s invention, Burgess v. Wetmore, 1879 Dec. Comm’r Pat. 237, 240 (no inurement of reduction to practice built by rival applicant), but an express request or direction is not required. The request may be “implicit! Cooper v. Goldfarb, 154 F.3d 1321, 1332 (Fed.Cir. 1998). In Hogue v. Cowling, 26 CCPA 874, 101 F.2d 541, 542, 544, 550 (1939), a third party’s reduction to practice inured to the benefit of the inventor, who disclosed his idea for a “confection making apparatus” to the manager of a popsicle company and suggested that the latter sketch the invention. The manager did not merely make a sketch, but built and tested a working device, believing he was “acting in accordance” with the inventor’s wishes. Id. at 550. The inventor knew nothing about the third party’s work, but was still able to claim it as his own to establish the priority of his invention.
Similarly, in Learned v. Thompson, 39 C.C.P.A. 730, 191 F.2d 409, 410-11, 415 (1951), an inventor benefited from work performed by a third party with whom he had no direct communication. The inventor, Learned, disclosed his invention and offered it to the United States government, which then turned the disclosure over to an employee, who reduced the invention to practice. Id. at 410-11. The employee even filed his own patent application for improvements he made, although he later abandoned that application in the first inventor’s favor. Id. at 410. The court treated the reduction to practice as the inventor’s because he had given “authorization to the Government” to use his invention. Id. at 415. The inventor’s authorization was sufficient even though he never asked the government or its employee to reduce the invention to practice nor supervised the reductive work.
In Kendall v. Searles, 36 C.C.P.A. 1045, 173 F.2d 986, 992 (1949), as with Honeywell and the RSCAC, Fafnir and Westinghouse had a “joint program of development.” The inventor, an official at Fafnir, conceived the invention and communicated his conception to Westinghouse, which conducted tests necessary to establish the inventor’s reduction to practice and the priority of his invention. Id. at 991-92. Although it appears that the inventor did not have “anything to do with the tests conducted by Westinghouse,” those tests were held to inure to his benefit. Id. at 992.
Thus, our case law does not support Solvay’s contention that an inventor must make an express directive or request to benefit from a third party’s reduction to practice. Rather, inurement exists if the inventor authorizes another to reduce his invention to practice. Here, the research agreement between the RSCAC and Honeywell confirms that the RSCAC authorized Honeywell to practice its invention in the United States and contemplated that Honeywell would do so. The contract *1007 stated that “RSCAC will assist [Honeywell] in the development of manufacturing processes for hydrofluorocarbon compounds (HFCs) ... or hydrofluorocarbon ethers (HFC ethers).” J.A. 3355. Pursuant to that agreement, Honeywell promised to provide yearly compensation, information, and equipment, while the Russians agreed to produce 1,000 kg of HFC-245fa, develop production processes, and send regular reports to Honeywell detailing their results and progress. While title and rights to inventions would belong ' to Honeywell, the RSCAC could make, use, and sell those inventions in Russia. The collaborative research arrangement between Honeywell and the RSCAC thus parallels the joint development program in Kendall, 173 F.2d at 992.
Solvay does not suggest that the RSCAC did not intend for Honeywell to use the information it sent or that it did not authorize Honeywell to reproduce the process it described. The undisputed facts show that the RSCAC authorized Honeywell to practice its invention and specifically contemplated that it would do so under the companies’ joint research agreement aimed at developing commercial processes for the production of HFC-245fa. The RSCAC engineers gave Honeywell personnel the information they needed to perform the inventive process in this country in July 1994, and Honeywell relied on that information in so doing. As we noted in our earlier decision, “in early 1995, Honeywell replicated the Russian process by following the information • provided by RSCAC, thereby practicing the invention in the United States. before the '817 patent’s priority date.” Solvay I, 622 F.3d at 1374 (emphasis added).
Solvay argues that there can be no in-urement here because Honeywell independently benefited from performing the RSCAC process. Solvay in particular points to Honeywell’s subsequent filing of its own patent application and notes that in Burgess, the existence of a rival patent application was held, in part, to defeat inurement. But Learned shows that the mere filing of a related patent application does not in itself preclude inurement. Here, the Russians applied for and received a patent in Russia, while Honeywell filed a patent application in the United States. The parties did not view these applications as rivals, providing that Honeywell was entitled to exclusive rights to inventions resulting from the collaboration while the Russians were entitled only to sublicenses.
' We therefore agree with the district court that the process invented by the Russian engineers was made in this country when Honeywell successfully performed the process because the Russians authorized Honeywell personnel to practice the invention and specifically contemplated that they would do so.[11] We affirm *1008 the district court’s judgment that the '817 patent is invalid under § 102(g)(2).[12]
AFFIRMED.

. The activities at issue occurred before the enactment of the Leahy-Smith America Invents Act ("AIA”), Pub.L. No. 112-29, § 3, 125 Stat 284, 285-93 (2011), after which § 102 no longer includes subsection (g). Therefore all references to § 102 are to the earlier version of the statute, 35 U.S.C. § 102(g)(2) (2006), which governed the activities at issue in this case. See AIA § 3(n)(l), 125 Stat. at 293 (providing that AIA amendments apply only to applications and patents with an effective filing date of March 16, 2013, or later).

. See, e.g., Holmwood v. Sugavanam, 948 F.2d 1236, 1238 (Fed.Cir.1991) (foreign inventor was "another inventor" under § 102(g)(2) when the invention was reduced to practice in the United States on his behalf); Shurie v. Richmond, 699 F.2d 1156, 1158 (Fed.Cir. 1983) (no reduction to practice where the inventive process was carried out in Canada, not the United States); Breuer v. DeMarinis, 558 F.2d 22, 27 (CCPA 1977) (foreign inventors reduced the invention to practice in this country when reduction to practice was done on their behalf in the United States).

. The chemical name for HFC-245fa, used in the '817 patent, is 1, 1, 1, 3, 3-pentafluoro-propane.

. The chemical name for HCC-240fa, used in the '817 patent, is 1, 1, 1, 3, 3-pentachloro-propane.

.Honeywell eventually filed a patent application covering a refined version of the RSCAC process in July 1996, which issued as U.S. Patent No. 5,763,706 ("the '706 patent").

. Although the district court’s invalidity ruling did not include claim 6, the parties stipulated that claim 6 would be withdrawn, and that Solvay could reassert it if only if claims 1, 5, 7, 10, and 11 were held not invalid.

. The jury also determined that claim 1, the only claim asserted at trial, was anticipated in view of U.S. Patent No. 5,574,192 ("the '192 patent”) and obvious in view of the '192 patent and U.S. Patent No. 5,202,509. The district court entered a judgment of invalidity on those grounds as well. In light of our disposition on appeal, we need not reach these other issues. The parties do not explain why on remand only claim 1 was the subject of the invalidity trial. It appears likely that the parties agreed that the remaining claims found to be infringed would stand or fall together with claim 1.

. Solvay did not preserve the issue by objecting to the “comprising” instruction.

. At trial, Solvay asserted that the phrase "as each of said [HFC-245fa] and [HC1] is being formed" should have been added to the jury instruction on claim 1. J.A. 96. In its motion for a new trial, Solvay did not renew that objection. The final jury instruction on claim 1 was modified only slightly to include "continuously” and "or drawn off.” J.A. 96. On appeal, Solvay concedes that "[t]his instruction is consistent with the claim limitation requiring 'isolation]’.” Reply Br. 27 (second alteration in original).

. On appeal, there is no contention that disclosure of the reduction to practice was required.

. The dissent argues that the majority is improperly incorporating concepts from interferences into the infringement context, and is allowing "secret prior art" to invalidate a patent. Dissent at 1008-09, 1011-12. The dissent is incorrect. We have repeatedly held that prior invention by another is a defense to infringement. See, e.g., Checkpoint Sys., Inc. v. U.S. Int’l Trade Comm’n, 54 F.3d 756, 761-62 (Fed.Cir.1995) ("However, § 102(g) is applicable in other contexts as well, such as when it is asserted as a basis for invalidating a patent in defense to an infringement suit.”) (citing Amgen, Inc. v. Chugai Pharm. Co., 927 F.2d 1200, 1203 (Fed.Cir.1991); New Idea Farm Equip. Corp. v. Sperry Corp., 916 F.2d 1561, 1565 (Fed.Cir.1990)). The invention was described in the Russian patent application. It is also established that § 102(g) requires that the prior inventor not “abandon, suppress, or cqnceal” his invention. See, e.g., Apotex, 254 F.3d at 1037 ("A § 102(g) prior invention defense is governed by the identical 'suppressed or concealed’ language applicable to priority determinations in interference proceedings.”). Here, the jury specifically found *1008 that the Russian inventors did not abandon, suppress, or conceal their invention, a conclusion the dissent does not dispute.

. We need not consider the district court’s exclusion of statements made by an attorney prosecuting a patent for Honeywell given Sol-vay’s admission, during oral argument, that this issue has no bearing on invalidity under § 102(g)(2).